IN THE UNITED STATES DISTRICT COURT FOR
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EDWARD GRIFFIN<br>1226 N. Carolina Ave., NE<br>Washington, D.C.  20002 | ) ) ) ) ) | Civil Action No. 16-2486<br>Judge _____ |
| *Plaintiff,* | ) ) |  |
| v. | ) ) |  |
| SYMANTEC CORPORATION<br>350 Ellis Street<br>Mountain View, CA  94043 | ) ) ) ) |  |
| *Defendant.* | ) ) |  |

## COMPLAINT

Plaintiff Edward Griffin (hereinafter "Plaintiff"), individually and on behalf of those similarly situated, by and through undersigned counsel, for his Complaint against Symantec Corporation (hereinafter ""Symantec" or "Defendant") seeking damages, hereby alleges as follows:

## NATURE OF THE CASE

1.   This action is an action for damages, seeking legal remedy for the Defendant's various violations of consumer protection laws, its tortious acts and omissions, as well as breaches of contract.

## PARTIES

**2.**      Plaintiff Griffin is a resident of the District of Columbia.

**3.**     Defendant Symantec Corporation is a corporation organized and existing under the laws of the State of Delaware, conducting extensive business throughout the United States, including the District of Columbia, and having a principal place of business at 350 Ellis Street, Mountain View, California 94043.

## JURISDICTION AND VENUE

**4.**     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). The Plaintiff, as a Class member, is a citizen of a different State than the Defendant, and the amount in controversy exceeds, exclusive of interest, fees and costs, $5,000,000.00.[1] Plaintiff and the class in this action seek restitution and disgorgement of any funds improperly obtained by Symantec, and seek to recover damages, attorney's fees, and costs..

**5.**     This Court may exercise personal jurisdiction over the Defendant who has availed itself of the jurisdiction of this Court through acts and omissions.

**6.**     The Defendant regularly conducts business in the District of Columbia where sells its services to individuals, companies, the federal and local governments and through the GSA Schedule.  Indeed, as noted in a recent false claims act case against Symantec, its total sales under the GSA Schedule contract were approximately $222 million from the period beginning January 2007 and ending September 2012.  It also has a steady lobbying presence on Capitol Hill and conducts regular seminars and workshops for customers and prospective customers in the District.

---

1   As of Fiscal Year 2016, Symantec generated some $1.6BN USD per year from its "Consumer Security" division, of which the Norton Anti-Virus Program (and automatically renewed subscriptions thereof) is the preeminent product.  *See* http://s1.q4cdn.com/585930769/files/doc_financials/2016/SYMC-2016-Annual-Report.pdf.

7.      Defendant has further availed itself to this jurisdiction through advertising directed at Plaintiff and similarly situated persons in the forum.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, as the acts upon which this action is based occurred in part in this District. Thousands of members of the Class reside in this District, and purchased Symantec's "Norton Anti-Virus" software here, and have been surreptitiously billed for automatic renewals for software with proper authorization, and thereby were injured in this District. The Defendant received substantial compensation and profit in this District.

## GENERAL ALLEGATIONS

9.      Since 1991, Symantec has produced and marketed an "antivirus" software program called "Norton Antivirus" (hereinafter, the "NAP" [Norton Antivirus Program]).

10.     The NAP consists of a series of measures to protect consumer's computers from unauthorized access and attack, including malware, viruses, and spamming.

11.     The NAP is marketed in several different versions (trial, Standard, Deluxe, Premium), offering varying levels of protection for the user.

12.     One of the principal marketing tools of the Defendant is to have a free or "trial" version of the NAP pre-loaded on new desktop or laptop computers.

13.     Symantec then offers upgraded protection during users' use of this free or "trial" use, and or during use of less-expensive versions of the NAP.

14.     At some point in September of 2012, the Plaintiff purchased a version of the NAP through Defendant's online store in the amount of approximately $84.79 for his computer.

15.     Plaintiff believed that the purchase was for one year of anti-virus software protection for his computer.

16.     At no point was Plaintiff made aware, during that purchase, in clear, differentiated, obvious, distinct language that this initial purchase of the NAP was a contract for automatic renewal.

17.     The Plaintiff used the NAP only on one computer to remove viruses that were slowing the operating speed, after which point he did not use the NAP again.

18.     On or about September of 2013, the Defendant charged Plaintiff, using his payment information from the initial purchase, for renewal of the NAP.  The amount charged was $84.79.

19.     Plaintiff received no notice prior to this renewal, was not asked for authorization to access his payment information, received no contemporaneous acknowledgment of the same, no receipt afterwards, and was never at any time offered the opportunity to "opt-out" of the renewal.

20.      On or about September of 2014, the Defendant again charged Plaintiff, again without his knowledge, using his payment information from the initial purchase, for renewal of the NAP.  The amount charged was $84.79.

21.     Plaintiff received no notice prior to this renewal, was not asked for authorization to access his payment information, received no contemporaneous acknowledgment of the same, no receipt afterwards, and was never at any time offered the opportunity to "opt-out" of the renewal.

22.     On or about September of 2015, the Defendant again charged Plaintiff, again without his knowledge, using his payment information from the initial purchase, for renewal of the NAP.  The amount charged was an increased fee of $95.16.

23.     Plaintiff received no notice prior to this renewal, was not asked for authorization to access his payment information, and was never at any time offered the opportunity to "opt-out" of the renewal.

24.     This time, however, Plaintiff did receive a relatively contemporaneous notification, as Defendant attempted to charge Plaintiff's bank account at a time when that particular account was low on deposited funds, causing the charge of $35 to be denied for insufficient funds.

25.     The Plaintiff's bank notified him of the existence of an overdraft in that account, whereupon Plaintiff began to investigate the cause of the unexpected charge.

26.     The Plaintiff was surprised to see a charge on his account from a software company he had not, to his knowledge, patronized for a number of years.

27.     Indeed, the transaction description line read merely "Norton *AP1160580062 877", with no further identifying or contact information.

28.     The Plaintiff then contacted Symantec through its customer support. Symantec has an entire customer service line and staff dedicated to complaints regarding automatic renewals.

29.     One of those dedicated staff members of the Defendant admitted, on or about October 7, 2015, that Symantec knew Plaintiff was not using the NAP at the time of renewal, or even before, as log-ins and updates were tracked on the Defendant's servers; that same employee also admitted that, at all times, Defendant had the Plaintiff's telephone number and home mailing address.  In addition, the employee admitted that Symantec knew that Plaintiff's email address was no longer valid or in use.

30.     Because this intentionally surreptitious automatic renewal scheme is misleading, unfair, and contrary to common and statutory law, Plaintiff now brings this suit against Symantec on behalf of himself and the class of individuals, defined herein. Similarly harmed by the Defendant.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23 (b)(2) and (3) on his own behalf and on behalf of all others similarly situated throughout the United States from December 21st, 2013, to the date of judgment herein, who Symantec improperly billed for automatic renewal of the NAP, without authorization or notice as required by law..

32.     Excluded from the Class are the officers, directors, and employees of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and all judges who may ever adjudicate this case.

33.      The members of the Class are so numerous that joinder of all members is

impracticable. There are untold thousands of members of the Class who are

geographically dispersed throughout the District, as well as across the United States.

34.      Plaintiff's claims are typical of the claims of the members of the Class

because Plaintiff and all Class members were injured by the same wrongful conduct of

the Defendant.

35.      The present suit satisfies the "commonality of interest" requirement in the

questions of law and fact involved affecting the members of the Class.  These common

legal and factual questions presented by this Class Action include:


- a. Whether Defendant automatically renewed Plaintiff's and similarly

  situated person's account with Symantec for Norton Antivirus

  Software without his consent and or his knowledge of Symantec's

  automatic renewal policy;

- b. Whether Defendant failed to provide any renewal notice prior to any

  automatic renewal period, so as to deliberately conceal from Plaintiff

  and similarly situated persons the impending charge(s) to his and their

  account(s);

- c. Whether Defendant automatically charged Plaintiff's and similarly

  situated person's debit or credit cards, deducted funds from Plaintiff's

  and similarly-situated person's bank accounts, and or billed Plaintiff

  and similarly-situated persons for the automatic renewal of Norton

  Antivirus Software without the Plaintiff's and similarly situated

person's consent or without his and similarly situated person's knowledge of Symantec's automatic renewal policy, despite Defendant's active and admitted knowledge that Plaintiff and similarly situated persons was and were no longer using the Norton Antivirus Software;

- d. Whether Defendant failed to honor cancellations or made it difficult for Plaintiff and similarly situated persons to cancel the Norton Antivirus Software;

- e. Whether Defendant further failed to provide timely refunds or refused to refund payments made by Plaintiff and similarly situated persons for automatic renewals done without Plaintiff's and similarly situated persons consent or his and their knowledge of the automatic renewal policy; and further

- f. Whether Defendant misrepresented that Norton Antivirus Software would be canceled, would not be renewed, or would be refunded.

- g. Whether these acts and omissions alleged herein should be enjoined.

- h. What compensatory damages, if any, are appropriate for these acts and omissions.

- i. Whether punitive damages are appropriate under the circumstances of the case.

- j. Whether attorney's fees should be awarded. As the claims of Plaintiff are typical of the claims of the Class, and Plaintiff has no

interests adverse to, or which irreconcilably conflict with other

members of the Class, Plaintiff is an adequate Class representative.

36.     Plaintiff will fairly and adequately protect the interests of the Class and

has retained experienced and competent counsel knowledgeable in the prosecution of

class action litigation. Class action lawsuits represent a superior method for the fair and

efficient adjudication of controversies such as this, and the Class will derive substantial

benefits from a class action proceeding.  A class action lawsuit will allow a large number

of similarly-situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the duplication of effort that numerous individual

actions would engender.

37.     Furthermore, maintenance of this action as a class action lawsuit will

allow for the adjudication of what are relatively small claims by many individuals, who

otherwise could not afford to individually litigate such claims against a large corporation.

This case presents no particular complexities in the management of this Class that would

preclude its from being maintained as a class action; in fact, the Defendant possesses in

its records electronically the identities of all or nearly all of the persons affected.  There is

no better alternative to a class action for the fair and efficient adjudication of this

controversy.

38.     Furthermore, they have retained committed and experienced counsel to

prosecute their claims vigorously.  Plaintiffs therefore will fairly and adequately protect

the interests of the members of the Class.

## COUNT I
### Negligence

**39.**      Plaintiff repeats and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

**40.**      The Defendants had a duty to act with reasonable care with regards to its customers.

**41.**      The Defendant breached that duty through acts or omissions, including by (1) Defendant automatically renewed Plaintiff's account with Symantec for Norton Antivirus Software without his consent and or his knowledge of Symantec's automatic renewal policy; and/or (2) Defendant failed to provide any renewal notice prior to any automatic renewal period, so as to deliberately conceal from Plaintiff the impending charge(s) to his account; and/or (3) Defendant automatically charged Plaintiff's debit or credit cards, deducted funds from Plaintiff's bank accounts, and or billed Plaintiff for the automatic renewal of Norton Antivirus Software without the Plaintiff's consent or without his knowledge of Symantec's automatic renewal policy, despite Defendant's active and admitted knowledge that Plaintiff was no longer using the Norton Antivirus Software; and/or (4) Defendant failed to honor cancellations or made it difficult for Plaintiff to cancel the Norton Antivirus Software; and/or (5) Defendant further failed to provide timely refunds or refused to refund payments made by Plaintiff for automatic renewals done without Plaintiff's consent or his knowledge of the automatic renewal policy; and/or (6) Defendant misrepresented that Norton Antivirus Software would be canceled, would not be renewed, or would be refunded.

**42.**      These acts or omissions led to a foreseeable and preventable damage to the Plaintiff.

43.     Those damages included unnecessary and unauthorized charges, an amount to be determined at trial, but not less than $169.58.

44.     Those damages included foreseeable consequential damages, an amount to be determined at trial, but not less than $35 and the monies billed to Class Members without authorization and or without provision of any actual services.

45.     Therefore, the Defendant must compensate the Plaintiff for the foreseeable harm caused by its negligent acts and omissions.

## COUNT II
### Breach of Contract (Rescission)

46.     Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

47.     Plaintiff and Defendant entered into a contract for services for a period of one year.

48.     The Defendant materially breached that contract by:  (1) Defendant automatically renewed Plaintiff's account with Symantec for Norton Antivirus Software without his consent and or his knowledge of Symantec's automatic renewal policy; and/or (2) Defendant failed to provide any renewal notice prior to any automatic renewal period, so as to deliberately conceal from Plaintiff the impending charge(s) to his account; and/or (3) Defendant automatically charged Plaintiff's debit or credit cards, deducted funds from Plaintiff's bank accounts, and or billed Plaintiff for the automatic renewal of Norton Antivirus Software without the Plaintiff's consent or without his knowledge of Symantec's automatic renewal policy, despite Defendant's active and admitted knowledge that Plaintiff was no longer using the Norton Antivirus Software; and/or (4) Defendant

failed to honor cancellations or made it difficult for Plaintiff to cancel the Norton

Antivirus Software; and/or (5) Defendant further failed to provide timely refunds or

refused to refund payments made by Plaintiff for automatic renewals done without

Plaintiff's consent or his knowledge of the automatic renewal policy; and/or (6)

Defendant misrepresented that Norton Antivirus Software would be canceled, would not

be renewed, or would be refunded.

49.     Those damages included unnecessary and unauthorized charges, an

amount to be determined at trial, but not less than $169.58.

50.     Those damages included foreseeable consequential damages, an amount to

be determined at trial, but not less than $35.


### COUNT III
### Constructive Fraud

51.     Plaintiff repeats and incorporates herein by reference the allegations in the

preceding paragraphs of this Complaint, as if set forth fully herein.

52.     Defendant intentionally, through its published statements, both through

advertising and oral statements made by itself and or through its agents, representatives,

and officers, made material misrepresentations and or omitted material information,

including, but not limited to, (1) failing to disclose that Defendant would automatically

renew Plaintiff's account with Symantec for Norton Antivirus Software without his

consent and or his knowledge of Symantec's automatic renewal policy; and/or (2)

Defendant failed to provide any renewal notice prior to any automatic renewal period,

and or provided incomplete or incorrect information as to the same, so as to deliberately

conceal from Plaintiff the impending charge(s) to his account; and/or (3) Defendant

automatically charged Plaintiff's debit or credit cards, deducted funds from Plaintiff's

bank accounts, and or billed Plaintiff for the automatic renewal of Norton Antivirus

Software without the Plaintiff's consent, knowledge, or without his knowledge of

Symantec's automatic renewal policy, despite Defendant's active and admitted knowledge

that Plaintiff was no longer using the Norton Antivirus Software; and/or (4) Defendant

failed to honor cancellations or made it difficult for Plaintiff to cancel the Norton

Antivirus Software, in part because Defendant provided incomplete or incorrect

information as to its cancellation policy; (6) Defendant misrepresented that Norton

Antivirus Software would be canceled, would not be renewed, or would be refunded.

53. Those representations and or omissions were false and material in nature.

54. Defendant knew of the falsity of those representations and or omissions,

and or made them with a reckless indifference to the truth as to be equivalent to actual

knowledge.

55. Defendant made those representations and or omissions for the purpose of

defrauding and or inducing Plaintiff to purchase the NAP.

56. Plaintiff relied on those representations and or omissions to his detriment.

57. Plaintiff, as a consumer, had a right to rely on the representations and or

omissions made by Defendant.

58. Plaintiff was injured by Defendant's intentional misrepresentations in an

amount to be determined at trial, but not less than $204.58.

59. Defendant's actual or constructive malice in making intentional

misrepresentations to Plaintiff should be punished by punitive damages.

## COUNT IV
### Intentional Misrepresentation

**60.** Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

**61.** Defendant intentionally, through its published statements, both through advertising and oral statements made by itself and or through its agents, representatives, and officers, made material misrepresentations and or omitted material information, including, but not limited to, (1) failing to disclose that Defendant would automatically renew Plaintiff's account with Symantec for Norton Antivirus Software without his consent and or his knowledge of Symantec's automatic renewal policy; and/or (2) Defendant failed to provide any renewal notice prior to any automatic renewal period, and or provided incomplete or incorrect information as to the same, so as to deliberately conceal from Plaintiff the impending charge(s) to his account; and/or (3) Defendant automatically charged Plaintiff's debit or credit cards, deducted funds from Plaintiff's bank accounts, and or billed Plaintiff for the automatic renewal of Norton Antivirus Software without the Plaintiff's consent, knowledge, or without his knowledge of Symantec's automatic renewal policy, despite Defendant's active and admitted knowledge that Plaintiff was no longer using the Norton Antivirus Software; and/or (4) Defendant failed to honor cancellations or made it difficult for Plaintiff to cancel the Norton Antivirus Software, in part because Defendant provided incomplete or incorrect information as to its cancellation policy; (6) Defendant misrepresented that Norton Antivirus Software would be canceled, would not be renewed, or would be refunded.

**62.** Those representations and or omissions were false and material in nature.

**63.** Defendant knew of the falsity of those representations and or omissions, and or made them with a reckless indifference to the truth as to be equivalent to actual knowledge.

**64.** Defendant knew, or should have known, that making those representations and or omissions could induce Plaintiff to purchase the NAP.

**65.** Defendant made those material misrepresentations and or omissions of material fact with the purpose of deceiving the Plaintiff and similarly situated persons, and for the purpose of enriching itself at Plaintiff's and similarly-situated persons' expense.

**66.** Plaintiff relied on those representations and or omissions to his detriment.

**67.** Plaintiff, as a consumer, had a right to rely on the representations and or omissions made by Defendant.

**68.** Plaintiff was injured by Defendant's intentional misrepresentations in an amount to be determined at trial, but not less than $204.58.

**69.** Defendant's actual or constructive malice in making negligent misrepresentations to Plaintiff should be punished by punitive damages.

## COUNT V
### Negligent Misrepresentation

**70.** Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

**71.** Defendant negligently, through its published statements, both through advertising and oral statements made by itself and or through its agents, representatives, and officers, made material misrepresentations and or omitted material information, including, but not limited to, (1) failing to disclose that Defendant would automatically renew Plaintiff's

account with Symantec for Norton Antivirus Software without his consent and or his

knowledge of Symantec's automatic renewal policy; and/or (2) Defendant failed to

provide any renewal notice prior to any automatic renewal period, and or provided

incomplete or incorrect information as to the same, so as to deliberately conceal from

Plaintiff the impending charge(s) to his account; and/or (3) Defendant automatically

charged Plaintiff's debit or credit cards, deducted funds from Plaintiff's bank accounts,

and or billed Plaintiff for the automatic renewal of Norton Antivirus Software without the

Plaintiff's consent, knowledge, or without his knowledge of Symantec's automatic

renewal policy, despite Defendant's active and admitted knowledge that Plaintiff was no

longer using the Norton Antivirus Software; and/or (4) Defendant failed to honor

cancellations or made it difficult for Plaintiff to cancel the Norton Antivirus Software, in

part because Defendant provided incomplete or incorrect information as to its

cancellation policy; (6) Defendant misrepresented that Norton Antivirus Software would

be canceled, would not be renewed, or would be refunded.

72.    Those representations and or omissions were false and material in nature.

73.    Defendant knew or should have known of the falsity of those

representations and or omissions, and or made them with a reckless indifference to the

truth as to be equivalent to actual knowledge.

74.    Defendant knew, or should have known, that making those representations

and or omissions could induce Plaintiff to purchase the NAP.

75.    Plaintiff relied on those representations and or omissions to his detriment.

76.    Plaintiff, as a consumer, had a right to rely on the representations and or

omissions made by Defendant.

77. Plaintiff was injured by Defendant's misrepresentations in an amount to be determined at trial, but not less than $204.58.

## COUNT VI
## Violation(s) of the Consumer Protection Act

78. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

79. Defendant intentionally, through its published statements, both through written and oral statements made by itself and or through its agents, representatives, and officers, and or visual depictions, made representations and or omitted information about the NAP, a consumer good, which had or could have had the capacity, tendency, or effect of deceiving or misleading consumers.

80. Those representations and or omissions included oral or written statements, and or visual depictions, as to the characteristic(s), quantit(ies), and or the particular standard(s), fee(s), renewal procedure(s) of the NAP.

81. For example, these representations and omissions included, but were not limited to, through its published statements, both through advertising and oral statements made by itself and or through its agents, representatives, and officers, (1) failing to disclose that Defendant would automatically renew Plaintiff's account with Symantec for Norton Antivirus Software without his consent and or his knowledge of Symantec's automatic renewal policy; and/or (2) Defendant failed to provide any renewal notice prior to any automatic renewal period, and or provided incomplete or incorrect information as to the same, so as to deliberately conceal from Plaintiff the impending charge(s) to his account; and/or (3) Defendant automatically charged Plaintiff's debit or credit cards, deducted funds from Plaintiff's bank accounts, and or billed Plaintiff for the automatic

renewal of Norton Antivirus Software without the Plaintiff's consent, knowledge, or without his knowledge of Symantec's automatic renewal policy, despite Defendant's active and admitted knowledge that Plaintiff was no longer using the Norton Antivirus Software; and/or (4) Defendant failed to honor cancellations or made it difficult for Plaintiff to cancel the Norton Antivirus Software, in part because Defendant provided incomplete or incorrect information as to its cancellation policy; (6) Defendant misrepresented that Norton Antivirus Software would be canceled, would not be renewed, or would be refunded.

82.     In addition to these statements, Defendant failed to state material fact(s), which had the tendency to deceive Plaintiff, as to the characteristic(s), quantit(ies), and or the particular standard(s), fee(s), renewal procedure(s) of the NAP.

83.     Those statements, visual depictions, and failure(s) to state material fact(s) caused Plaintiff to suffer pecuniary harm.

84.     Those statements, visual depictions, and failure(s) to state material fact(s) constitute intentional and or willful violation(s) of D.C. Consumer Protection Act, and in fact constitute violations of the consumer protection statutes of the several States of the Union.

85.     Plaintiff claims statutory and actual damages pursuant to the D.C. Code for these violations of the same in an amount to be determined at trial, but not less than $204.58.

86.     Plaintiff further claims attorney's fees for Defendant's violations of the same.

## JURY DEMAND

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court:

A. Award actual monetary damages to Plaintiff and to all Similarly Situated Persons to the extent permitted by law, but no less than $204.58;

B. Award statutory damages to the Plaintiff and to all Similarly Situated Persons to the extent permitted by law for each and every violation of the applicable consumer protection statute(s);

C. Award to Plaintiff attorneys' fees and other reasonable litigation costs to the extent permitted by law;

D. Award to Plaintiff such punitive damages as the Court considers just; and

E. Grant such other and further relief as the Court deems just and proper.

DATED:        December 21st, 2016

Respectfully submitted,

_____
Joshua G. Whitaker
whitaker@adelphilaw.com
Adelphi LLP
1936 Eastern Avenue
Baltimore MD 21231
Voice/Fax: 888-367-0383

*Attorney for Plaintiff*